**Jesus MALDONADO et al., Plaintiffs,**

v.

**COUNTY OF MONTEREY et al., Defendants.**

**No. C–71 1045.**

United States District Court, N. D. California.

July 1, 1971.

Cohen, Farnsworth, Denison, Carder & Engelhardt, William H. Carder, Salinas, Cal., for plaintiffs.

William H. Stoffers, County Counsel, County of Monterey, Salinas, Cal., for defendants.

## MEMORANDUM OF DECISION

PECKHAM, District Judge.

Plaintiffs, on behalf of themselves and others similarly situated, invoke the jurisdiction of this Court under 28 U.S.C. § 1343(3) and (4), and bring this suit under 42 U.S.C. § 1983, alleging the deprivation, under color of a municipal ordinance of their constitutional right to free speech. Plaintiffs seek a preliminary injunction against the enforcement of Ordinance No. 1799 of the County of Monterey, and ask for a declaratory judgment pursuant to the provisions of 28 U.S.C. §§ 2201 and 2202, that the ordinance is unconstitutional on its face.

Plaintiffs are labor organizers with the United Farm Workers Organizing Committee, AFL–CIO (UFWOC), and were active during the Salinas Valley agricultural disputes in August and September, 1970. In pursuing their attempts to organize agricultural workers, the plaintiffs find it necessary to communicate with the workers in the fields. It is difficult to locate or gain access to the workers after hours, because many of them are housed in labor camps owned by growers, and closed to UFWOC representatives.

In attempting to communicate with farm workers while they are in the fields, the union representatives find it almost always necessary to use some sort of loudspeaker equipment because the workers are usually located too far from the roadway to hear someone speaking in a normal voice. Most of UFWOC's picketing activity in Monterey County takes place on rural highways and roads adjacent to the agricultural fields. Using sound amplification devices is the only really effective way of disseminating information because many of the workers live in labor camps or other remote and isolated locations, and do not have regular access to the few Spanish-language radio stations and newspapers in the area. Further, plaintiffs' financial resources for utilizing these alternative means of communication are limited.

On April 27, 1971, the Board of Supervisors of Monterey County passed and adopted County Ordinance No. 1799, entitled, "An Ordinance Relating to Noise on Highways."[1] Said ordinance,

---

1. Section 1. DEFINITIONS. As used in this ordinance:
   (a) "Public Highway" means the full width of the right of way or any highway or road maintained in whole or in part by the County of Monterey or the State of California.
   (b) "Public Thoroughfare" means the full width of the right of way or owned fee of any alley, sidewalk, bridge, or trail owned or maintained in whole or in part by the County of Monterey or the State of California.
   (c) "Loud and Raucous Noise" means:
   (1) Any noise made by the motor of any automobile, truck, tractor, motorcycle, or aircraft of any kind not reasonably required in the operation thereof under the circumstances and shall include but not be limited to backfiring, motor racing, and the buzzing by airplanes.
   (2) The sound of the discharge of any gun or other explosive except by or with the permission of the governing body having control of the highway or thoroughfare.
   (3) The human voice or any record or recording thereof when amplified by any device whether electrical or mechanical or otherwise to such an extent as to cause it to carry on to private property or to be heard by others using the public highways or public thoroughfares.
   (4) Any sound not included in the foregoing which is of such volume, intensity, or carrying power as to interfere with the peace and quiet of persons upon private property or other uses of the public highways and thoroughfares.
   Section 2. LOUD AND RAUCOUS NOISE PROHIBITED: It shall be unlawful for any person to willfully make, emit or transmit or cause to be made, emitted, or transmitted any loud and raucous noise upon or from any public highway or public thoroughfare or from any aircraft of any kind whatsoever.

which has been effective since May 27, 1971, prohibits loud and raucous noise upon or from any public highway and defines loud and raucous noise in relevant part, as follows:

§ 1(c) (3) The human voice or any record or recording thereof when amplified by any device whether electrical or mechanical or otherwise to such an extent as to cause it to carry on to private property or to be heard by others using the public highways or public thoroughfares.

On May 12, 1971, plaintiffs were using a loudspeaker to speak to strawberry workers near Watsonville. Shortly after they began, a Monterey County Sheriff's deputy appeared in response to complaints from a ranch supervisor and remarked that after May 27, plaintiffs would no longer be allowed to use the loudspeaker.

Plaintiffs contend that the challenged ordinance absolutely prohibits the use of loudspeakers from public roads and thus violates the First Amendment. From May 27 to June 11, 1971, plaintiffs refrained from using loudspeaking equipment. On the latter date, this Court issued a temporary restraining order against the enforcement of § 1(c) (3) of Monterey County Ordinance No. 1799. On June 21, 1971 a hearing was held to determine whether a preliminary injunction should issue and to decide whether defendants' motion to dismiss should be granted.

■ Defendants move this Court to dismiss this action, citing Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L. Ed.2d 669 (1971), and its companion cases. Defendants argue that Younger v. Harris prevents the federal district courts from interfering with the enforcement of state criminal statutes, except in the most unusual situations. It is possible that the opinion in Younger v. Harris, if broadly construed, may support defendants' contention. However, this Court is impressed with the fact that the holding therein was confined to the question of when federal courts should enjoin the state judicial processing of an ongoing criminal prosecution. In the present case, criminal prosecutions, although threatened against plaintiffs, have not yet been instituted; hence, the relief sought will not enjoin state criminal proceedings.

Defendants are urging this Court to go beyond Younger v. Harris, *supra*, and to rule, in effect, that plaintiffs must exhaust their state judicial remedies before they can proceed in the federal courts under 42 U.S.C. §§ 1981 et seq. This Court must decline to make such an unprecedented extension of the Younger v. Harris decision. Cf., Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L. Ed.2d 647 (1967).

Therefore, defendants' motion to dismiss is denied.

■ Abstention is also improper in this case. The California Supreme Court has already had an opportunity to construe a similar ordinance, and has upheld its constitutionality. Haggerty v. Associated Farmers of Calif., 44 Cal. 2d 60, 279 P.2d 734 (1955); Wollam v. City of Palm Springs, 59 Cal.2d 276, 29 Cal.Rptr. 1, 379 P.2d 481 (1963) (citing *Haggerty* with approval).

Turning now to the merits of plaintiffs' motion for a preliminary injunction, two Supreme Court cases are clearly in point: Saia v. New York, 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1949), and Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949). In Saia v. New York, the Court declared unconstitutional a penal ordinance which forbade the use of sound amplification devices except with the permission of the Chief of Police. The Court stated therein: "Loud-speakers are today indispensable instruments of effective public

Section 3. Any person violating any of the provisions of this ordinance shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not more than five hundred dollars or by imprisonment in the County Jail for a period of not more than six months, or by both such fine and imprisonment.

speech. The sound truck has become an accepted method of political campaigning. It is the way people are reached." Saia v. New York, *supra*, 334 U.S. at 561, 68 S.Ct. at 1150.

In Kovacs v. Cooper, *supra*, the Court affirmed Kovacs' conviction of violating an ordinance prohibiting the operation upon the city street of vehicles equipped with sound amplifiers or other instruments which emitted loud and raucous noises. In a majority opinion speaking for three of the justices, Justice Reed wrote that "The right of free speech is guaranteed every citizen that he may reach the minds of willing listeners and to do so there must be opportunity to win their attention. This is the phase of freedom of speech that is involved here." Kovacs v. Cooper, *supra*, 336 U.S. at 87, 69 S.Ct. at 454. "* * * it is a permissible exercise of legislative discretion to bar sound trucks with broadcasts of public interest, amplified to a loud and raucous volume, from the public ways * * *" *Id.*

However, the *Kovacs* case had led to much confusion because the Justices did not agree on whether the ordinance involved should have been construed to prohibit all sound trucks, or should have been read as prohibiting only sound trucks which emit "loud and raucous noises." Nonetheless, at least six of the Justices considered that an absolute prohibition either was, or probably would be, unconstitutional. Viewing *Saia* and *Kovacs* together, this Court is in agreement with one commentator on *Kovacs* who concluded:

"* * * the Kovacs decision, while displaying internal confusion, has left the fundamental rights of sound truck use essentially unchanged: municipalities may impose reasonable regulations as to place, time and volume, but still may not absolutely ban sound trucks nor subject them, without adequate standards, to previous restraints that may allow possible censorship." Comment, 62 Harv.L.Rev. 1228, 1229 (1949).

See also, Phillips v. Township of Darby, 305 F.Supp. 763, (D.C.1969).

Providing support for this conclusion is Red Lion Broadcasting Co. v. F. C. C., 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969), wherein the Supreme Court had occasion to discuss the breadth of its holding in *Kovacs,* and commented that "* * * the ability of new technology to produce sounds more raucous than those of the human voice justifies restrictions on the sound level, and on the hours and places of use, of sound trucks so long as the restrictions are reasonable and applied without discrimination." *Id.*, at 387, 89 S.Ct. at 1805.

Directing our attention to the ordinance challenged herein, this Court must determine whether it constitutes an absolute prohibition or an unreasonable regulation of the use of loudspeakers. In construing an almost identical Fresno County Ordinance, the California Supreme Court held that the ordinance was not an absolute prohibition. It stated:

The provision defining proscribed noise does not include all use of "loud-speaking" devices, but only the amplification of the human voice "to such an extent as to cause it to carry on to private property or to be heard by others using the public highways or public thoroughfares." Other uses, such as broadcasting music or even the human voice when not amplified are not excluded. Moreover, the prohibition extends only to a "public highway or public thoroughfare or from any aircraft." The use of such devices in other locations, such as private property, public parks, squares and meeting places, and similar places normally devoted to public assembly is not in any manner limited. Haggerty v. Associated Farmers of California, *supra*, 44 Cal.2d at 69, 279 P.2d at 740.

Notwithstanding California's reasoning, its construction of the ordinance clearly prohibits the amplification of ideas (except perhaps when accompanied by music) on public roads. Thus, the

ordinance effectuates an absolute prohibition on the use of loudspeaking devices on public highways and thoroughfares.

■ *Saia* and *Kovacs* proscribe only loud and raucous noise. The Monterey ordinance prohibits loud and raucous noise, but defines such noise as the human voice amplified to an extent that when broadcast from a public highway it can be heard by others using the roadway, or others on private property adjacent to the highway. In other words, any amplification of the human voice above a normal speaking level is prohibited on the public highways. This absolute prohibition of the use of loudspeaking equipment on the public roadways is unconstitutional. Saia v. New York, *supra*; Kovacs v. Cooper, *supra*.

It is true, as defendants contend, that the use of sound amplification equipment on public roadways may be reasonably regulated as to place, time and volume. However, it is specious to argue that because such devices may be used in other locations, a prohibition against their use on public roadways is reasonable.

The only apparent legitimate state end to be served by the regulation of sound trucks is the protection of the tranquility of the community, or expressed differently, protection of the community's citizens from disturbance by "aural aggression," and sound-pollution. See Phillips v. Township of Darby, *supra*, 305 F.Supp. at 765. But, First Amendment freedoms are so important to our democratic society that they will be staunchly protected by the courts from unnecessary restriction. "These freedoms are delicate * * * supremely precious" and, in order to protect them, "[G]overnment may regulate in the area only with narrow specificity." N.A.A.C.P. v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963).

The Monterey ordinance is not drawn with narrow specificity, nor does it reasonably regulate the use of loudspeaking devices. It flatly prohibits their use on public roads. Rather than limiting the decibel-level, it effectively bars any sound louder than the normal human voice. Rather than restricting the use of such equipment to certain periods of the day, it restrains such use at any time. Rather than regulating the use of sound amplification devices by distinguishing the nature of the place of use, e. g., residential streets, business district, or rural roads, the ordinance bars the use of such devices on all public highways and thoroughfares. In sum, "The statute is not narrowly drawn to regulate the hours or places of use of loud-speakers, or the volume of sound (the decibels) to which they must be adjusted." Saia v. New York, *supra*, 334 U.S. 558 at 560, 68 S.Ct. at 1149.

■ To support the issuance of a preliminary injunction, the moving party must establish a substantial likelihood that he will prevail on the merits, and that irreparable harm will result if equitable relief is not immediately provided. Alameda Conservation Association v. California, 437 F.2d 1087 (9th Cir. 1971); Coffee Dan's Inc. v. Coffee Don's, 305 F.Supp. 1210 (N.D.Cal.1969). The above discussion evidences plaintiffs' likelihood of success upon a full trial on the merits.

It is also clear that irreparable harm will result if a preliminary injunction does not issue. Cf., Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). The summer months are important to plaintiff farm labor organizers. They are engaged in a strike in order to persuade certain growers to negotiate contracts with their union. They cannot effectively communicate with the workers in the fields without using sound amplification devices. "It is the way people are reached." Saia v. New York, *supra*, 334 U.S. at 561, 68 S.Ct. at 1150. Enforcement of Monterey County Ordinance No. 1799 infringes upon plaintiff's First Amendment rights and causes them irreparable injury.

Accordingly, a preliminary injunction shall issue restraining the enforcement

of Monterey County Ordinance No. 1799, Section 1(c) (3). This memorandum shall constitute findings of fact and conclusions of law in compliance with Rule 52, Fed.Rules Civ.Proc.